UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

13 CV 7930



Ronald D. Coleman (RC 3875)
Joel G. MacMull (JM 8239)
**GOETZ FITZPATRICK LLP**
One Penn Plaza—Suite 3100
New York, NY 10119
(212) 695-8100
rcoleman@goetzfitz.com
jmacmull@goetzfitz.com
*Attorneys for Plaintiffs Opinion Corp. d/b/a*
*PissedConsumer.com, Michael Podolsky and*
*Alex Syrov*

| | |
|---|---|
| OPINION CORP. d/b/a PISSEDCONSUMER.COM, MICHAEL PODOLSKY, and ALEX SYROV, *Individually*, | Civil Action No. _____ |
| *Plaintiffs*, | **COMPLAINT AND JURY DEMAND** |
| -vs.- | |
| EIC AGENCY LLC, SANFORD WILK, and DAVID H. LEDGIN, ESQ., *Individually* | |
| *Defendants*. | |

     1.    Plaintiffs Opinion Corp. d/b/a PissedConsumer.com, Michael Podolsky and Alex

Syrov (collectively, "plaintiffs"), by and through their undersigned attorneys, for their complaint

against defendants EIC Agency LLC, Sanford Wilk and defendant David Ledgin, Esq.

(collectively, "defendants"), complain and allege as follows:

**JURISDICTION AND VENUE**

     2.    This Court has jurisdiction over this controversy pursuant to the Declaratory

Judgment Act, 28 U.S.C. §§ 2201(a) and 2202, and under the Communications Decency Act, 47

U.S.C. § 230 *et. seq.*

3.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the conduct making up the basis of the complaint took place in this District.

4.     This Court has supplemental jurisdiction over plaintiffs' state law claims because such claims arise out of the same common nucleus of operative facts as the federal claims alleged herein.

## PARTIES

5.     Plaintiff Opinion Corp. d/b/a PissedConsumer.com ("PissedConsumer") is a New York Corporation.

6.     Plaintiff Michael Podolsky ("Podolsky") is the Chief Executive Officer of Opinion Corp. and a resident of the City of New York.

7.     Plaintiff Alex Syrov ("Syrov") is the President of Opinion Corp. and a resident of the City of New York.

8.     Defendant EIC Agency LLC ("EIC"), is a business entity organized and operating under the laws of the State of New York, with a principal place of business at 1001 Sixth Avenue, New York, New York.

9.     Upon information and belief, defendant Sanford Wilk is the principal and Chief Operating Officer of EIC, whose address is unknown at this time and who participated in the day-to-day operations of EIC at all times material.

10.    Defendant David Ledgin is legal counsel to EIC and Wilk who, upon information and belief, maintains a principal place of business located at 1539 Franklin Avenue, Suite 201, Mineola, New York. Upon information and belief, defendant Ledgin is a resident of the State of New York.

2

**FACTS**

11.     Plaintiff Opinion Corp. ("PissedConsumer") is the corporate owner of a website located at www.PissedConsumer.com.

12.     Plaintiffs Podolsky and Syrov are two of Opinion Corp.'s principals.

13.     Podolsky and Syrov operate the PissedConsumer website.

14.     As its name implies, the PissedConsumer website is a type of popular website referred to as a "gripe suite."

15.     More specifically, PissedConsumer.com is an Internet forum that permits third party users ("users") to post comments and criticisms of businesses and individuals, which posts may be made anonymously.

16.     As such, PissedConsumer is an information service or system that provides or enables computer access by multiple users to a computer server.

17.     PissedConsumer does not typically edit, confirm or vet the content of users' posts for accuracy or otherwise.

18.     On June 26, 2013, a civil action against EIC and Wilk was commenced in this Court by an individual, not a party to this action, named Anastassia Smorodinskaya ("Smorodinskaya"), styled *Smorodinskaya v. EIC Agency LLC and Sanford Wilk*, Case No. 13-cv-4444 (GBD) (the "underlying action").

19.     The underlying action arose in connection with comments posted by Smorodinskaya, anonymously, on PissedConsumer, that were critical of EIC and Wilk, and concerned actions taken by EIC and Wilk in response to the posting of those comments.

3

20.     While not parties to the underlying action, Podolsky and Syrov were involved in negotiations concerning its settlement, which took place from approximately August 1, 2013 through October 25, 2013.

21.     Those negotiations resulted in the execution by the parties to the underlying action in addition to Podolsky and Syrov of a confidential settlement agreement dated October 22, 2013 (the "settlement agreement").

22.     The settlement agreement contemplated that Podolsky and Syrov would take certain actions vis-à-vis Wilk and EIC and vice versa, some of which were to take place after the date the settlement agreement was executed.

23.     As revealed by subsequent events, however, during the period when the settlement agreement was negotiated, defendants were engaged in a scheme by which they gave the appearance of intending to, and ultimately agreeing to, finally resolve their disputes with Podolsky and Syrov while actually planning to commence litigation immediately after obtaining the relief they sought via settlement on the false pretext that Podolsky and Syrov had breached the settlement agreement.

24.     The relevant provision of the settlement agreement is a non-disparagement clause, which provides as follows:

> [Podolsky and Syrov] agree not to make, publish or communicate any Disparaging remarks, comments or statements, whether orally or in writing in any medium or form, including, but not limited to, the media, internet postings, or on-line blogs, concerning Defendants, their immediate families, co-employers or employees, regardless of whether such statements are truthful, nor take any other actions which in any way could disparage Defendants, reflect adversely on Defendants or may tend to encourage any adverse action against Defendants.

25.     The settlement agreement goes on to define "Disparaging remarks, comments or statements" as "those that impugn the character, honesty, integrity, morality or business acumen or ability, or reflect negatively upon, the individual or entity being disparaged."

26.     Critically, the settlement agreement did not contemplate or require any actions be taken by PissedConsumer.

27.     In particular, the settlement agreement did not contemplate or require that any party take action or otherwise cause postings concerning EIC or Wilk made by non-parties to be removed from PissedConsumer.

28.     After the full execution of the settlement agreement and what all parties agreed was the satisfaction of its terms, Smorodinskaya, through counsel, filed an executed Joint Stipulation of Dismissal on October 29, 2013, which was subsequently "So Ordered" by the Court on October 31, 2013.

29.     Notwithstanding the foregoing dismissal, and despite the fact that no change whatsoever had taken place in the underlying facts on which the settlement agreement was based, on November 4, 2013 – four days after the Court entered the stipulation of dismissal – defendant Ledgin sent an email to plaintiffs' counsel on behalf of EIC and Wilk stating as follows:

Re:  Your client's [*sic*] breach of the settlement agreement
Gentlemen:

This notice is sent to you as a preliminary step to EIC and Sanford Wilk's filing of a lawsuit in federal court against your clients, Messrs. Podolsky and Syrov, for their breach of the Confidential Settlement Agreement, as follows:

1. My client's independent research reveals your two, above-named clients to be equitable owners of the corporate entity which owns Pissedconsumer.com or pissedoffconsumer.com, the website wherein highly libelous comments (libel, per

se) were posted some time ago and remain until today; we are speaking of those posts which were the subject of a brief negotiation we had, the result of which was your client's expressed position that they "could not" or "cannot" remove these posts. Inasmuch as they OWN the website, our position is that by allowing the posts to remain, given their equitable and actual corporate ownership of the entire site, your aforementioned two clients are actively in willful violation of Confidential Settlement Agreement paragraph 6(c) and (e). Paragraph 6(c) disallows your clients' "...actions which in any way could disparage Defendants, reflect adversely on Defendants or may tend to encourage any adverse action against Defendants"....By voting their shares in favor of allowing the continued postings of these disgusting comments (which are patently untrue), or, alternatively, by NOT voting their shares such as to overrule any minority view in support of leaving the comments (because we are informed that they run the company), or even by not seeking to amend bylaws or do whatever it takes to PREVENT and RECALL such postings, Podolsky and Syrov are in direct and flagrant violation of the agreement.

2. Should the offensive postings remain 48 hours from now, my client has authorized me to bring immediate legal action against Pissedconsumer's aforementioned owners. Should they transfer ownership to a strawman in an attempt to exempt themselves from coverage under the agreement, we will continue the litigation because they will still be in violation of the spirit of the agreement, particularly inasmuch as the agreement also binds your clients' "assigns"--i.e., other shareholders to whom your clients may delegate or may have delegated the task of voting the issue of the offending postings, and it is not good practice for people in their position to argue they are playing no role in the postings simply because they try and transfer paper ownership or are part of a "corporation", where, as here, they OWN such corporation. We insist on substance over form, including in the enforcement of our agreement.

3. Moreover, should they "defend" by taking the position that it is a corporation doing the postings and not "them", we will seek punitive damages as well, inasmuch as the intent of our settlement agreement was clear, and this is a clear

and willful violation of same. Their anticipated attempts to justify leaving the postings will, we will argue, require a more punitive approach to the breach's resolution, and we will seek far more than just court costs and attorney's fees. If they remove the posts immediately without our having to file, we will ask for nothing in settlement, but once you respond hereto in the negative and compel us to file, we will go to the mat on this one, and will expect both victory and financial reward.

Be guided accordingly.

David defendant Ledgin, Esq.

30.     Notwithstanding the "analysis" set forth in defendant Ledgin's November 4, 2013 email, the provision of the settlement agreement he claims to have been breached by Podolsky and Syrov was, as set forth above, merely a non-disparagement clause which by its terms forbade the parties themselves from making negative comments about the other parties to the settlement agreement.

31.     That the non-disparagement clause of the settlement agreement was not intended in any way to address the postings on PissedConsumer.com concerning Wilk and EIC that they claim constitute a breach is obvious from the fact that the settlement agreement manifestly does not mandate their removal from the site.

32.     In fact, in an email to counsel for plaintiffs dated October 7, 2013, defendant Ledgin wrote as follows:

As per your item number 3 on your email dated August 28th, 2013 at 11:32 a.m., while even the recipients of the domain names [i.e., Podolsky and Syrov] agree not to badmouth, **there is no restriction on what people post at pissedoff.com or whatever that site is**; however, keep in mind that because no releases are being exchanged between my client and the non-party clients your main client

speaks for, there can be future litigation between them but **this is not a direct concern** between our clients.

33.     Moreover, notwithstanding the representation in defendant Ledgin's November 4, 2013 email suggesting otherwise, defendant Ledgin,Wilk and EIC were, at all relevant times, aware that Podolsky and Syrov operated PissedConsumer and were its principal shareholders.

34.     In sum, no new facts occurred or came to the attention of defendant Ledgin, Wilk and EIC that could justify their assertion that the settlement agreement which did not require Podolsky and Syrov, in any capacity whatsoever, to remove such postings was now "breached" precisely because they failed to do so after the stipulation of dismissal was filed and entered as an order of the Court.

35.     Based on the foregoing, upon information and belief it appears that EIC and Wilk, and with knowing aid and, upon information, connivance of their lawyer, defendant Ledgin, never had any intention whatsoever of resolving the dispute that comprised the parameters of the settlement agreement affecting Podolsky and Syrov, but sought only to achieve relief from the lawsuit pending against EIC and Wilk by simulating agreement to a resolution so as to induce the parties to dismiss the claims against them.

36.     The claims of Smorodinskaya in the underlying action that were dismissed as a result of defendants' settlement include  claims of violations of federal and state employment law which exposed EIC and Wilk to substantial liability for unpaid wages as well as attorneys' fees and costs.

37.     Indeed, the overtures from Wilk and EIC to settle the underlying action were made only after the filing by Smorodinskaya of her opposition to Wilk and EIC's legally

deficient motion to dismiss the underlying action, regarding which opposition papers defendant Ledgin admitted to counsel for Smorodinskaya "now required me to work."

38.     Defendants' purposeful, malicious and manipulative conduct in connection with negotiating the settlement as alleged above constituted bad faith and fraud in the inducement of the settlement agreement.

39.     In anticipation that EIC and Wilk would, as explicitly threatened, seek to commence litigation in an effort to obtain relief that was not contemplated or provided by the settlement agreement, and to which they are manifestly not entitled to as a matter of law, plaintiffs bring this action.

<u>**FIRST CAUSE OF ACTION**</u>

**DECLARATORY JUDGMENT**
**AGAINST DEFENDANTS EIC & WILK**
**(28 U.S.C. §2201)**

40.     Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs.

41.     Prior to the filing of this action, and pursuant to the settlement of the underlying action, Podolsky and Syrov informed defendants EIC and Wilk through their counsel defendant Ledgin that posts by third parties pertaining to EIC and Wilk would not, as part of any settlement, be removed from PissedConsumer.com.

42.     Section 230 of the Communications Decency Act ("CDA") provides that "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."

43.     The CDA provides further that "No cause of action may be brought and no liability may be imposed under any State of local law that is inconsistent with this section."

9

44.     PissedConsumer is an interactive computer service as defined by the CDA and relevant case law.

45.     Notwithstanding the clear and unequivocal understanding that the settlement agreement entered into in the underlying action specifically excluded EIC and Wilk's desire to have certain postings removed from Pissedconsumer.com, defendants have nonetheless threatened plaintiffs with meritless legal claims arising from a purported breach of that agreement.

46.     By intentionally and maliciously threatening frivolous litigation, defendants have deprived plaintiffs of their right to operate PissedConsumer.com free from the threat of unjustified litigation.

47.     Plaintiffs' legally unimpeachable refusal to remove postings concerning Wilk or EIC from PissedConsumer.com is not a breach of the settlement agreement or otherwise unlawful.

48.     Defendants have at all relevant times been aware that the legal claims they have advanced are baseless.

49.     Defendants' purposeful and malicious threats of litigation constitute an interference and encroachment on plaintiffs' right to be immune from state law claims pursuant to Section 230 of the CDA.

50.     By reason of the foregoing, a present, actual and justifiable controversy exists between plaintiffs and EIC and Wilk, which may be determined by judgment or order of this Court, and plaintiffs seek a declaration regarding the parties' rights and concerning related legal issues raised by defendants' threat of litigation.

51.     Plaintiffs' filing of this action and obtaining of declaratory judgment is, in light of defendants' bellicose threat of immediate litigation, the only means by which PissedConsumer can maintain its lawful business practices, including the continued display of third party postings pertaining to EIC and Wilk on its website.

52.     Plaintiffs' remedy at law, in the event EIC and Wilk were, by filing misleading, incomplete or false papers in order to obtain a preliminary injunction despite their manifest lack of entitlement to the same under established law, would not be adequate to compensate them for the injuries threatened or inflicted by defendants.

53.     Plaintiffs' request that this Court declare and adjudicate the parties' respective rights with respect to the plaintiffs' lawful practices, including the application of Section 230 of the CDA.

## SECOND CAUSE OF ACTION

### PROMISSORY ESTOPPEL
### AGAINST ALL DEFENDANTS

54.     Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs.

55.     Had Podolsky and Syrov known of defendants intention to intentionally misconstrue the settlement agreement, Podolsky and Syrov would not have:

      i.     agreed to enter into the settlement agreement and provided EIC and Wilk with a relinquishment of their rights as set forth therein;

      ii.     incurred the costs and risks of financing protracted settlement negotiations which took place from approximately August 1st through October 25th, 2013;  or

      iii.    otherwise acted to their detriment in reliance on defendants' serial false representations.

56.    Podolsky and Syrov reasonably relied on defendants' stated goal to end or avoid all future litigation arising from the original dispute among the parties to the settlement agreement.

57.    Podolsky and Syrov have incurred substantial damages as a result of defendants' misrepresentations and wrongful conduct in an amount to be determined at trial.

### THIRD CAUSE OF ACTION

### BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING AGAINST ALL DEFENDANTS

58.    Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs.

59.    Through their conduct, as detailed above, defendants breached the covenant of good faith and fair dealing implied as a matter of law in the settlement agreement.

60.    Upon information and belief, the purpose of defendant Ledgin's November 4, 2013 email is to obtain relief on behalf of EIC and Wilk which was specifically excluded by the settlement agreement, and not, as stated, to enforce the settlement agreement or any of the rights and obligations provided therein.

61.    Defendants know or should know that their purported claims of breach of the settlement agreement are without merit.

62.    Defendants' allegations of breach of the settlement agreement are false, are known to be false, and are brought solely to deprive Podolsky and Syrov of the benefits of the

12

terms of the settlement agreement, and are in further derogation of plaintiffs' statutory immunity as provided under Section 230 of the CDA.

63.     Defendants' have invoked the threat of spurious litigation against plaintiffs in an attempt to obtain an advantage beyond the rights afforded to EIC and Wilk as a matter of law.

64.     Defendants' actions are unlawful, unfair, wrongful, malicious, and fraudulent, in that they constitute abuse of process and the making of false claims and misrepresentations.

65.     Plaintiffs have suffered and will continue to suffer economic harm arising from defendants' breaches in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### FRAUD IN THE INDUCEMENT
### AGAINST ALL DEFENDANTS

66.     Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs.

67.     Defendants blatantly and intentionally misrepresented their intention to settle with Podolsky and Syrov notwithstanding defendant Ledgin's earlier October 7, 2013 email "that there can be future litigation between them but this is not a direct concern between our clients," with particular reference to the subject of postings by third parties on PissedConsumer.

68.     Defendants fraudulently induced Podolsky and Syrov to enter into a settlement agreement by virtue of the inducements set forth above.

69.     Podolsky and Syrov reasonably relied upon the representations of defendants and continued to negotiate settlement and ultimately entered into the settlement agreement with EIC and Wilk which obligated them to refrain from certain lawful activity.

70.    Beginning on or about August 1, 2013, and continuing through October 25, 2013, defendant Ledgin repeatedly misrepresented EIC and Wilk's intentions to settle with Podolsky and Syrov.

71.    Plaintiffs have suffered and will continue to suffer economic harm arising from defendants' breaches in an amount to be determined at trial.

**WHEREFORE,** plaintiffs Opinion Corp. d/b/a PissedConsumer, Michael Podolsky and Alex Syrov respectfully request that this Court grant the following relief:

A.    For a declaration that plaintiffs' continued posting of reviews concerning EIC and Wilk is not in breach of the parties' settlement agreement;

B.    For a declaration that plaintiffs are each immune from state law claims of defamation by virtue of the application of 47 U.S.C. § 230;

C.    That defendants, their officers, directors, servants, employees, attorneys, agents, representatives, and all persons in active concert or participation with them, be enjoined and restrained permanently from interfering with plaintiffs' operation of PissedConsumer.com;

D.    For damages jointly and severally, in an amount to be determined at trial, including but not limited to compensatory; incidental, consequential damages, punitive damages; costs; attorneys' fees as provided under the settlement agreement; expert fees; pre- and post-judgment interest; and

E.    Such other and further relief as this Court determines to be just and proper.

### JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), plaintiff demands trial by jury on all issues.

Respectfully submitted,
GOETZ FITZPATRICK LLP

By: _____

Ronald D. Coleman (RC 3875)
Joel G. MacMull (JM 8239)
One Penn Plaza—Suite 3100
New York, NY 10119
Tel: (212) 695-8100
rcoleman@goetzfitz.com
jmacmull@goetzfitz.com
*Attorneys for Plaintiffs Opinion Corp. d/b/a*
*PissedConsumer.com, Michael Podolsky and*
*Alex Syrov*

Dated:  November 7, 2013

15